# Supreme Court of Florida

———————

No. SC17-1014

———————

**LUIS BORN-SUNIAGA,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

October 15, 2018

POLSTON, J.

We review the decision of the Fourth District Court of Appeal in *State v. Born-Suniaga*, 219 So. 3d 74 (Fla. 4th DCA 2017), which certified conflict with decisions of the First, Second, and Third District Courts of Appeal.[1]  For the reasons explained below, we hold that the State is not entitled to the recapture period discussed in Florida Rule of Criminal Procedure 3.191 where the State informed the defendant it had terminated its prosecutorial efforts but failed to notify the defendant of new and different charges based on the same conduct or

———————————

1.  We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.

criminal episode that were filed before the speedy trial period expired.  Therefore, we quash the Fourth District's contrary decision in *Born-Suniaga*, disapprove the Fifth District Court of Appeal's decision in *State v. Jimenez*, 44 So. 3d 1230 (Fla. 5th DCA 2010), on which the Fourth District relied for its holding, to the extent it is inconsistent with this decision, and approve the First, Second, and Third District's decisions in the certified conflict cases to the extent they are consistent with this decision.

## I.  BACKGROUND

The Fourth District described the facts as follows:

Following an incident on November 6, 2014, [Born-Suniaga] was arrested the same day for misdemeanor battery in attempting to prevent the victim from reporting a noise complaint to law enforcement.  [Born-Suniaga] provided his address, posted bond, and was released on November 7, 2014.

On February 6, 2015, ninety-two days after his arrest, the State filed an information charging [Born-Suniaga] with tampering with a witness in violation of section 914.22, Florida Statutes (2014), a felony, and misdemeanor battery, on the basis of the November incident.  That same day, the State filed instructions for the Clerk to issue a not-in-custody capias as to both counts.  On February 11, 2015, the State asked the Broward Sheriff's Office ("BSO") to serve the capias, listing the address [Born-Suniaga] had provided upon his initial arrest.  A detective was assigned to execute the warrant on March 25, 2015.  There is no indication in the record that the detective made any effort to serve the warrant.

On April 15, 2015, the State filed a "no information" sheet on the original misdemeanor battery charge.  [Born-Suniaga] was notified that the charge had been dismissed and his bond discharged.

The 175–day speedy trial period expired on April 30, 2015.

[Born-Suniaga] first became aware of the new charges on November 19, 2015, well over 175 days after his arrest, through his

- 2 -

co-defendant's counsel. Upon becoming aware of the charges, [Born-Suniaga] did not file a notice of expiration of speedy trial time. Rather, on November 25, 2015, [Born-Suniaga] moved to discharge, arguing that he was entitled to immediate discharge because the State was not allowed a fifteen-day recapture period, as it had not made any effort to notify him of the charges within the speedy trial period. The State responded, arguing that because the information was filed before the expiration of the 175–day period, the State was entitled to a recapture period. The State further argued that reasonable efforts were made to serve [Born-Suniaga] with the capias during the speedy trial period, as evidenced by its communications with BSO.

The trial court held an evidentiary hearing on the motion to discharge. [Born-Suniaga] was the only witness to testify. He stated that since his initial arrest, he had moved twice, but had updated his address with the U.S. Postal Service each time and had his mail forwarded from the original address. He did not update his address with the Clerk's office. However, he did not receive any forwarded mail from the Clerk, much less anything suggesting that there were pending charges against him. Nothing in the record indicates that the Clerk's office sent [Born-Suniaga] any notice when the information was filed in February 2015.

[Born-Suniaga] testified that he had repeatedly tried to determine whether the State had filed any new charges against him. On February 20, 2015, after his co-defendant was charged, [Born-Suniaga] was informed by his attorney that there were no charges against him. He went to the jail later that day when his co-defendant turned himself in. At the jail, [Born-Suniaga] was informed by a deputy that there were no charges pending against him. Later that day, [Born-Suniaga] encountered other police officers who told him he was free to go and informed him that there were no warrants against him. In April 2015, [Born-Suniaga] looked his case up and saw that it was listed as having been "disposed." Based on this, he was led to believe there were no charges against him.

The State presented no evidence. It did not show that anyone had attempted to notify [Born-Suniaga] of the charges filed. No clerk's office employee testified that any mailings had been sent to [Born-Suniaga], and no testimony showed that BSO had made any attempt to serve [Born-Suniaga].

The trial court found that there was no record activity from [Born-Suniaga] in the case file, no notices were ever mailed to him,

and the file "pursuant to the clerk's office policy was sealed." The court concluded that there was no way for [Born-Suniaga] to find out that this case existed and no effort to alert him to the fact that charges stemming from the initial incident were still ongoing. . . . [T]he court granted [Born-Suniaga's] motion for discharge without allowing the State the fifteen-day recapture period. The State timely appealed.

*Born-Suniaga*, 219 So. 3d at 75-77 (footnotes omitted).

On appeal, the State argued that the trial court "erred by granting [Born-Suniaga's] motion for discharge without affording the State the opportunity to try him within the recapture period, where the information was filed within the speedy trial timeframe, but [Born-Suniaga] was not served until after the expiration of that time." *Id.* at 77. An en banc Fourth District agreed with the State, finding support for its conclusion in rule 3.191(p)—which provides that trial within a recapture period is the remedy for the State's failure to try a defendant within the time specified by the speedy trial rule—and this Court's decisions in *State v. Nelson*, 26 So. 3d 570 (Fla. 2010) (reaffirming that the defendant has a right to a speedy trial, not the right to a speedy discharge), and *State v. Naveira*, 873 So. 2d 300 (Fla. 2004) (holding the State was entitled to the recapture period where it charged the defendant on the last possible day under the speedy trial rule even though that timing precluded the defendant from being prepared to go to trial within the speedy trial time period). *Id.* at 77-80.

In so holding, the Fourth District receded from its prior decisions "requiring that the defendant be notified of the charges within the speedy trial period." *Id.* at

- 4 -

82.  The Fourth District also certified conflict with *Puzio v. State*, 969 So. 2d 1197 (Fla. 1st DCA 2007), *State v. Drake*, 209 So. 3d 650 (Fla. 2d DCA 2017), *State v. McCullers*, 932 So. 2d 373 (Fla. 2d DCA 2006), *Cordero v. State*, 686 So. 2d 737 (Fla. 3d DCA 1997), and *State v. Gantt*, 688 So. 2d 1012 (Fla. 3d DCA 1997).  *Id*.

## II. ANALYSIS

Born-Suniaga argues that the State is not entitled to the speedy trial rule's recapture period when it leads the defendant to believe that it has terminated its prosecutorial efforts and fails to notify the defendant that new and different charges based on the same conduct were filed before the speedy trial period expired.[2]  We agree.

This case solely involves the application of Florida Rule of Criminal Procedure 3.191.[3]  Specifically, it relates to the default 175-day period of rule

---

2.  "[T]he interpretation of the rules of procedure with regard to the right to a speedy trial [is] a question of law subject to de novo review by this Court."  *State v. Nelson*, 26 So. 3d 570, 573-74 (Fla. 2010).

3.  Because the parties in this case have not argued that the Florida Constitution and United States Constitution should alter the application of Florida Rule of Criminal Procedure 3.191, we do not address the constitutional implications asserted by the dissent.  Moreover, we quote and refer to the language in the various subsections of rule 3.191 to apply the rule as a whole, as written, and in context.  The dissenting opinion focuses upon the sequence of our analysis, thereby missing the entirety of the applied rule.

3.191 when a defendant facing a felony charge does not formally demand a speedy trial. Subdivision (a) of rule 3.191 states, in pertinent part, that

> every person charged with a crime shall be brought to trial . . . within 175 days of arrest if the crime charged is a felony. If trial is not commenced within these time periods, the defendant shall be entitled to the appropriate remedy as set forth in subdivision (p).

Fla. R. Crim. P. 3.191(a). Subdivision (j) provides that "[i]f trial of the accused does not commence within the periods of time established by this rule, a pending motion for discharge shall be granted by the court unless it is shown that" one of several mentioned exceptions apply. Fla. R. Crim. P. 3.191(j). Under subdivision (p), the defendant's filing of a notice of expiration of time for speedy trial triggers the trial court to conduct the inquiry required by subdivision (j) to determine whether any of the exceptions to the expiration of the speedy trial period (e.g., a continuance charged to the defendant) are applicable. If not, subdivision (p) requires that the State be given what is commonly referred to as a "recapture period" within which to bring the defendant to trial. Specifically, subdivision (p)(3) provides:

> No later than 5 days from the date of the filing of a notice of expiration of speedy trial time, the court shall hold a hearing on the notice and, unless the court finds that one of the reasons set forth in subdivision (j) exists, shall order that the defendant be brought to trial within 10 days. A defendant not brought to trial within the 10-day period through no fault of the defendant, on motion of the defendant or the court, shall be forever discharged from the crime.

- 6 -

Fla. R. Crim. P. 3.191(p)(3); *see also Nelson*, 26 So. 3d at 576 ("[T]he recapture period illustrates the principle that a defendant has a right to speedy trial, not a right to speedy discharge without trial.").

Importantly, however, subdivision (o) of rule 3.191 provides that "[t]he intent and effect of this rule shall not be avoided by the state by entering a nolle prosequi to a crime charged and by prosecuting a new crime grounded on the same conduct or criminal episode or *otherwise by prosecuting new and different charges based on the same conduct or criminal episode, whether or not the pending charge is suspended, continued, or is the subject of entry of a nolle prosequi*." Fla. R. Crim. P. 3.191(o) (emphasis added). Therefore, "[t]he rule itself expressly warns that the State may not circumvent the intent of the rule by appearing to drop the charges against a defendant, only to refile them later." *Puzio*, 969 So. 2d at 1201.

This Court's precedent confirms that the State's charging decisions cannot effectively toll the running of rule 3.191's speedy trial period. In *State v. Agee*, 622 So. 2d 473, 475 (Fla. 1993), this Court analyzed the provision now codified in subdivision (o) of rule 3.191 and "h[e]ld that when the State enters a nol pros, the speedy trial period continues to run and the State may not refile charges based on the same conduct after the period has expired." In denying the State the recapture period in this situation, this Court explained that "[t]o allow the State to unilaterally toll the running of the speedy trial period by entering a nol pros would

eviscerate the rule—a prosecutor with a weak case could simply enter a nol pros while continuing to develop the case and then refile charges based on the same criminal episode months or even years later, thus effectively denying an accused the right to a speedy trial while the State strengthens its case." *Id.*

Subsequently, in *Genden v. Fuller*, 648 So. 2d 1183 (Fla. 1994), this Court considered a case in which the State had terminated the prosecution through a "no action" before filing formal charges. In so doing, this Court refused to allow the State to "circumvent the [speedy trial] rule simply by declining to prosecute an arrestee before charges are filed," concluding instead "that whether the State voluntarily terminates a prosecution before an information is filed, as was done [in the case before it], rather than after the defendant has been formally charged, as was done in *Agee*, is a distinction without a legally cognizable difference." *Id.* at 1185 (internal quotation marks omitted).

In Born-Suniaga's case, the facts are clear that he was "led to believe there were no charges against him," among other reasons, because he was "notified that the charge [for which he was arrested] had been dismissed and his bond discharged," when in reality the State had filed new charges—before the State dropped the original charge—but those new charges were "sealed," and "there was no way for [Born-Suniaga] to find out that [they] existed and no effort to alert him to the fact that charges stemming from the initial incident were still ongoing"

before the expiration of the speedy trial period. 219 So. 3d at 75-77. To be clear, Born-Suniaga was arrested for misdemeanor battery on November 6, 2014, the same day the conduct took place. *Id.* at 75. Then, on February 6, 2015, the State filed an information charging Born-Suniaga with witness tampering and misdemeanor battery based on the same November 2014 conduct. *Id.* "On April 15, 2015, the State filed a 'no information' sheet on the original misdemeanor battery charge." *Id.* Born-Suniaga was told that the original charge for which he had been arrested had been dismissed and the bond discharged. *Id.* at 75-76. However, he only "became aware of the new charges on November 19, 2015," after "[t]he 175-day speedy trial period [had] expired on April 30, 2015." *Id.* at 76.

Accordingly, because the State notified Born-Suniaga that it dismissed the original charges and discharged his bond but failed to notify him that it in fact had filed new charges based on the same conduct, the trial court correctly denied the State the recapture period and discharged Born-Suniaga. Allowing the State to proceed to trial pursuant to the recapture period described in subdivision (p) would allow the State to avoid the effect of the speedy trial time period described in subdivision (a) "by prosecuting new and different charges based on the same conduct or criminal episode, whether or not the pending charge is suspended, continued, or is the subject of entry of a nolle prosequi," a result that is expressly prohibited by subdivision (o). Fla. R. Crim. P. 3.191(o). It would also allow the

- 9 -

State to do indirectly—arrest the defendant, lead the defendant (whether intentionally or not) to believe it is no longer pursing the prosecution, and file new charges within the speedy trial period that are only revealed when the defendant can no longer have the speedy trial guaranteed by the rule—what the State cannot do directly under *Agee* (and *Genden*)—arrest the defendant, nolle prosse (or no action) the case, and recharge (or charge) the defendant after the speedy trial period expires. "The central concern is to prevent the State from avoiding the rule by waiting to formally charge an accused, appearing to abandon the case, and then resurrecting the charges later, based on the same conduct." *Puzio*, 969 So. 2d at 1201; *see also McCullers*, 932 So. 2d at 375-76 ("A defendant's right to file a notice of expiration is similarly defeated even where charges are filed before expiration of the speedy trial period if the State has previously acted affirmatively to terminate its prosecutorial efforts but then has filed charges without rearresting or otherwise giving notice to the defendant before expiration of the period.").

Rather than construing rule 3.191 in its entirety, the Fourth District's decision below improperly focused upon the remedy of the recapture period outlined in subdivision (p). And contrary to the Fourth District's conclusion otherwise, this Court's decision in *Naveira* does not sanction the State avoiding the speedy trial rule by informing the defendant that the charges against him were dismissed but failing to notify him that new charges based on the same conduct

- 10 -

were filed so long as the State files the new charges within the speedy trial period. In *Naveira*, we held that the State did not violate the defendant's right to speedy trial under rule 3.191 by charging the defendant on the 175th day following his arrest. 873 So. 2d at 302, 306-07. Our decision in *Naveira* focused on whether the timing precluded him from preparing for trial within the speedy trial time period. In contrast, because Born-Suniaga was "led to believe there were no charges against him," *Born-Suniaga*, 219 So. 3d at 76, he did not have the same choice as Naveira—to enforce his "right to invoke the speedy trial rule and go to trial within ten days [or] to request a continuance because he was not prepared to go to trial in ten days," *Naveira*, 873 So. 2d at 307-08. Accordingly, while this Court in *Naveira* rejected a "case-by-case approach to determining whether the State is entitled to the recapture period," *Born-Suniaga*, 219 So. 3d at 81, it did so in the context of rejecting a " 'speedy charging period' with a shifting and unknown deadline," *Naveira*, 873 So. 2d at 310, not in the context of allowing the State to lure the defendant into believing there is no need to file a notice of expiration of speedy trial because no charges are pending.

Under the circumstances in this case, the trial court correctly denied the State the recapture period and discharged Born-Suniaga. *See* Fla. R. Crim. P. 3.191(a), (j), (o)-(p).

- 11 -

### III. CONCLUSION

For the reasons above, we quash the Fourth District's decision in *Born-Suniaga*, disapprove the Fifth District's decision in *Jimenez* to the extent it is inconsistent with this opinion, and approve the First District's decisions in *Puzio*, the Second District's decisions in *McCullers* and *Drake*, and the Third District's decisions in *Cordero* and *Gantt* to the extent they are consistent with this opinion.

It is so ordered.

PARIENTE, LEWIS, QUINCE, and LABARGA, JJ., concur.
LAWSON, J., dissents with an opinion, in which CANADY, C.J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LAWSON, J., dissenting.

I would read Florida Rule of Criminal Procedure 3.191 as it is written and thereby alleviate the constitutional concerns inherent in the majority's misreading of this rule of procedure, commonly referred to as the "speedy trial rule." Because this was the approach taken by Fourth District Court of Appeal, I would approve that court's well-reasoned, unanimous en banc opinion. Therefore, I dissent.

### BACKGROUND

On November 6, 2014, Born-Suniaga was arrested on a charge of misdemeanor battery for an incident that had occurred that day. *State v. Born-Suniaga*, 219 So. 3d 74, 75 (Fla. 4th DCA 2017). He posted bond and was

- 12 -

released the next day.  *Id.*  Ninety-two days after his arrest, the State filed an information charging Born-Suniaga with both witness tampering, a third-degree felony, and misdemeanor battery, based upon the November 6 incident.  *Id.*  The State immediately requested a capias and, a few days later, asked the Broward County Sheriff's Office to serve the capias on Born-Suniaga.  *Id.*  Thereafter, the State also filed a "no information" sheet as to the original battery charge, causing the original bond to be discharged—such that Born-Suniaga's liberty was no longer restricted in any way as a result of the initial arrest.  *Id.* at 75-76.  For reasons not explained in the record, the information was filed or treated by the Clerk of Court as "sealed" and was not timely served by the Sheriff.  *Id.* at 76.  Born-Suniaga was alerted to the charges by a co-defendant's counsel on November 19, 2015—a little more than one year after his initial arrest on the battery charge. *Id.*

## ANALYSIS

### I. Florida's Speedy Trial Rule

#### A. What the Rule Plainly Says.

Florida Rule of Criminal Procedure 3.191, the "speedy trial rule," provides that a defendant who is not brought to trial within 175 days of his or her arrest (on a felony charge and on any misdemeanor charged with a felony) may file a notice of expiration of the 175-day "speedy trial period," giving the State a very short

window of time—a "recapture period" of about two weeks—during which to try the defendant or have the charges permanently dismissed. *See* Fla. R. Crim. P. 3.191(a), (p).

The majority begins its analysis by accurately quoting subdivision (a) of the rule, which states in pertinent part that

> every person charged with a crime shall be brought to trial . . . within 175 days of arrest if the crime charged is a felony. If trial is not commenced within these time periods, the defendant shall be entitled to the appropriate remedy *as set forth in subdivision (p).*

Fla. R. Crim. P. 3.191(a) (emphasis added). Oddly, the majority then skips subdivision (p), the very subdivision to which subdivision (a) directs the reader for the "appropriate remedy" available to a defendant who is not brought to trial "within 175 days of arrest." Subdivision (p), the "remedy" provision skipped in the majority's analysis, provides in its entirety:

> **(p) Remedy for Failure to Try Defendant within the Specified Time.**
>
> (1) No remedy shall be granted to any defendant under this rule until the court has made the required inquiry under subdivision (j).
>
> (2) At any time after the expiration of the prescribed time period, the defendant may file a separate pleading entitled "Notice of Expiration of Speedy Trial Time," and serve a copy on the prosecuting authority.
>
> (3) No later than 5 days from the date of the filing of a notice of expiration of speedy trial time, the court shall hold a hearing on the notice and, unless the court finds that one of the reasons set forth in subdivision (j) exists, shall order that the defendant be brought to trial

- 14 -

within 10 days. A defendant not brought to trial within the 10-day period through no fault of the defendant, on motion of the defendant or the court, shall be forever discharged from the crime.

Fla. R. Crim. P. 3.191(p).

As seen above, the remedy unambiguously set forth in the speedy trial rule for a defendant not brought to trial within 175 days after arrest is three-fold. First, the defendant is entitled to file and serve a notice of expiration of speedy trial. Fla. R. Crim. P. 3.191(p)(2). Second, this filing triggers a short time window during which the State is required to present its evidence at trial. Fla. R. Crim. P. 3.191(p)(3). Third, if the State cannot bring the defendant to trial within the recapture period, the defendant is to be "forever discharged from the crime." *Id.* Immediate discharge without a recapture period is not included as an "appropriate remedy." *See id.* Additionally, subdivision (p) directs that the defendant is not entitled to the remedies set forth in subdivision (p) "until the court has made the required inquiry under subdivision (j)." Fla. R. Crim. P. 3.191(p)(1). Subdivision (j) provides:

> **(j) Delay and Continuances; Effect on Motion.** If trial of the accused does not commence within the periods of time established by this rule, a pending motion for discharge shall be granted by the court unless it is shown that:
>
> (1) a time extension has been ordered under subdivision (i) and that extension has not expired;
>
> (2) the failure to hold trial is attributable to the accused, a codefendant in the same trial, or their counsel;

- 15 -

(3) the accused was unavailable for trial under subdivision (k); or

(4) the demand referred to in subdivision (g) is invalid.

If the court finds that discharge is not appropriate for reasons under subdivisions (j)(2), (3), or (4), the pending motion for discharge shall be denied, provided, however, that trial shall be scheduled and commence within 90 days of a written or recorded order of denial.

Fla. R. Crim. P. 3.191(j).

The three subdivisions quoted above—(a), (p), and (j)—in that order (as expressly directed in the rule), encompass the basic mechanism for application of the speedy trial rule in a case where the time for bringing the defendant to trial has expired—there is no provision authorizing a different remedy under special circumstances; there is only the remedy authorized by subdivision (p).

As explained above, the majority opinion evades this conclusion by skipping subdivision (p)—the sole "remedy" provision in the rule—and quoting subdivision (j) out of context, making it sound as if the rule authorizes discharge without a recapture period when it does not. Majority op. at 6. The majority writes:

Subdivision (a) of rule 3.191 states, in pertinent part, that

every person charged with a crime shall be brought to trial . . . within 175 days of arrest if the crime charged is a felony. If trial is not commenced within these time periods, the defendant shall be entitled to the appropriate remedy *as set forth in subdivision (p)*.

Fla. R. Crim. P. 3.191(a). *Subdivision (j) provides* that "[i]f trial of the accused does not commence within the periods of time established

by this rule, a pending motion for discharge shall be granted by the court unless it is shown that" one of several mentioned exceptions apply. Fla. R. Crim. P. 3.191(j).

Majority op. at 6 (emphasis added). By skipping subdivision (p) and quoting subdivision (j) immediately after subdivision (a), an uninformed reader could be left with the misimpression that the rule provides for discharge without a recapture period whenever a case does not proceed to trial within 175 days after arrest. But, when these expressly interlinked subdivisions are read in the sequence expressly directed in the rule itself (in other words, as plainly written), it is clear that the rule provides for permanent discharge only when a "defendant [is] not brought to trial within the 10-day [recapture] period through no fault of the defendant, on motion of the defendant," Fla. R. Crim. P. 3.191(p)(3), and then only after "the court has made the required inquiry under subdivision (j)." Fla. R. Crim. P. 3.191(p)(1).

**B. Application of the Speedy Trial Rule, as Written, in this Case.**

Applying the rule as it is written would have allowed Born-Suniaga to secure a trial *within two weeks of the day he first learned of the charges pending against him*—charges that were filed within 175 days of his initial arrest as required by *State v. Agee*, 622 So. 2d 473, 475 (Fla. 1993).[4] This is, after all, the

---

4. For reasons explained below, I disagree with the limitation that our precedent, in decisions such as *Agee*, places on the State's ability to charge a defendant after 175 days from the defendant's initial arrest. In any event, this

- 17 -

speedy *trial* rule, not the speedy *discharge* rule. And, that opportunity for a speedy *trial* is what the express terms of the rule unambiguously provide a defendant and the State. Ironically, over thirty years ago we specifically removed, as antithetical to the rule's purpose, the very remedy of immediate discharge that the majority writes back in with its anti-textual "interpretation." *See* Fla. R. Crim. P. 3.191 committee notes (1984); *see also State v. Nelson*, 26 So. 3d 570, 576 (Fla. 2010) ("The creation of the recapture period emphasizes the purpose of the rule—'to promote the efficient operation of the court system and to act as a stimulus to prosecutors to bring defendants to trial as soon as practicable, thus minimizing the hardships placed upon accused persons awaiting trial.' In other words, the recapture period illustrates the principle that a defendant has a right to speedy trial, not a right to speedy discharge without trial.") (citation omitted) (quoting *Lewis v. State*, 357 So. 2d 725, 727 (Fla. 1978)).

The rule itself is clear and unambiguous and does not authorize discharge without a recapture period under any circumstances.

### C. Born-Suniaga's Argument and the Majority's Misreading of the Rule.

---

precedent does not apply to the facts of this case because the State charged Born-Suniaga within 175 days of his initial arrest.

Contrary to the plain language of the speedy trial rule, Born-Suniaga sought immediate discharge on the theory that the court should ignore the actual rule altogether and instead apply the unwritten, different, and contrary rule applied by the First, Second, and Third District Courts of Appeal that, in his view, better captures the "spirit" of the written rule he asks us to contravene. *See, e.g.*, *Puzio v. State*, 969 So. 2d 1197, 1201 (Fla. 1st DCA 2007) (opining that providing the State a recapture period in cases where the defendant was unaware of charges until after expiration of the speedy trial period would be "contrary to the spirit of the speedy trial rule").

The majority sides with Born-Suniaga, not because it agrees that the "spirit" of the speedy trial rule justifies immediate discharge but because it reads subdivision (o) as negating subdivisions (a), (p) and (j)—which provide for the recapture period. Subdivision (o) reads:

> **(o) Nolle Prosequi; Effect.** The intent and effect of this rule shall not be avoided by the state by entering a nolle prosequi to a crime charged and by prosecuting a new crime grounded on the same conduct or criminal episode or otherwise by prosecuting new and different charges based on the same conduct or criminal episode, whether or not the pending charge is suspended, continued, or is the subject of entry of a nolle prosequi.

Fla. R. Crim. P. 3.191(o).

At first reading, and standing alone, the practical application of this subdivision is not readily apparent. But when considered in context, this

- 19 -

subdivision makes sense. The key is first understanding the "intent and effect" of the rule, which is clear from the unambiguous language of the core provisions for remedying a speedy trial violation quoted above: subdivisions (a), (p) and (j). The unambiguous intent and effect of these core provisions is to give a defendant whose liberty interests are impaired by pending charges an opportunity to secure a "speedy" resolution of those charges by securing a "speedy trial"—while also protecting the interests of the State and victims of crime by providing a reasonable opportunity for a trial before a case is permanently discharged. In theory, the State could avoid this "intent and effect" if, after the defendant filed a proper notice of expiration and during the recapture period, the State were permitted to nolle pros the charges and thereby avoid permanent discharge by the court. Rather than reading subdivision (o) as negating the unambiguous core provisions of the rule, subdivision (o) should be read in harmony with the rest of the rule as preventing the State from avoiding the ultimate remedy of discharge in those cases where it cannot bring the defendant to trial during the recapture period.

Reading the rule in this manner would better reflect the constitutional speedy trial right that this procedural rule is designed to effect and, more importantly, would avoid the separation of powers entanglement that occurs when the judiciary unjustifiably interferes with substantive law or executive discretion under the guise of procedural rulemaking. *See generally Boyd v. Becker*, 627 So. 2d 481, 484 (Fla.

1993) (explaining that this Court's rulemaking authority "is limited to rules governing procedural matters and does not extend to substantive rights" such as "statutes of limitation [that] supersede [this Court's] procedural rules"). In summary, defining what constitutes a crime, the appropriate punishment (or range of punishments) for those crimes, and the time limit within which the executive must file charges and notify an accused of those charges are substantive law issues properly determined by the Legislature. Deciding whether or when to file charges within the time frame established by the Legislature is an executive function. Because these are legislative and executive functions, the judiciary should not interfere with them by creating a different time-based deadline unless there is a valid legal justification for its action.

For example, rule 3.191 is designed to provide a procedure to protect the constitutional speedy trial right guaranteed by the Sixth Amendment. If shortening the time within which a prosecutor must notify an accused of pending charges were necessary to protect the speedy trial right, the judiciary would have a legal basis for doing so. As I will demonstrate below, however, neither the speedy trial right nor any other legal basis exists to justify judicial interference with substantive law or executive discretion in this area. That is why I agree with other justices who have concluded that this Court's interpretation and application of rule 3.191 unjustifiably interferes with substantive law and executive discretion in a manner

that raises significant constitutional concerns. *See, e.g.*, *Bulgin v. State*, 912 So. 2d 307, 313 (Fla. 2005) (Bell, J., concurring in result only) ("The precedent of this Court constrains me to concur with the majority. However, . . . I too believe that we have applied (and now rewritten) a judicially created rule of procedure in a manner that unnecessarily constricts the applicable statute of limitations."); *id.* at 314 (Wells, J., dissenting) ("I dissent because the majority applies a judicial rule of procedure in a manner that eviscerates the statute of limitations enacted by the Legislature. The majority's decision adds to a line of precedents from this Court that has created and continually expanded a substantive right which has no basis in the original language of the rule itself or in Florida's statutes and is not mandated by the State or Federal Constitutions."); *Reed v. State*, 649 So. 2d 227, 230 (Fla. 1995) (Wells, J., dissenting) ("I am concerned that this decision is another substantial evisceration of the statutes of limitation in criminal-law prosecutions. This decision goes even further than *Genden v. Fuller*, 648 So. 2d 1183 (Fla. 1994)."); *id.* at 229-30 (Shaw, J., dissenting) ("I dissent for the same reasons I joined Justice Wells' dissents in *[Genden]* and *Farina v. Perez*, 647 So. 2d 113 (Fla. 1994). It seems that [*Agee*] has taken on a Frankenstein-like role I never envisioned or intended when I authored that opinion."); *id. at* 229 (Overton, J., dissenting) ("I agree fully with Justice Wells' dissent. I write to express my belief that the majority has now crossed the line and made our speedy trial rule

substantive rather than procedural by this construction and that, consequently, it is unconstitutional."); *Genden*, 648 So. 2d at 1186 (Wells, J., dissenting) (joined by Overton and Shaw, JJ.) ("I emphasize that here we are dealing with a rule of court procedure. This rule should not be applied so broadly that it eviscerates the statute of limitations set by the [L]egislature."). These concerns arise because the majority's misreading of the rule does not account for any of the applicable constitutional concerns.

## II. Constitutional Provisions that Should Guide Our Interpretation and Application of the Speedy Trial Rule.

### A. Article III, Section 1, Florida Constitution.

Under our Constitution, the power to enact substantive laws is granted exclusively to the Florida Legislature. *See* art. III, § 1, Fla. Const.; *see also Benyard v. Wainwright*, 322 So. 2d 473, 475 (Fla. 1975). Section 914.22, Florida Statutes (2014), creates the crime of tampering with a witness, making it a third-degree felony when, as here, it "involves the investigation or prosecution of a misdemeanor," and section 775.15(2)(b), Florida Statutes (2014), grants the State three years from the offense date within which to file third-degree felony charges on the offense. There are some exceptions and nuances, but, in general, if the State fails to file charges on a third-degree felony within three years after the crime is committed, the State will be forever barred from charging or trying the accused, as a matter of substantive law. Substantive law also requires timely notice of the filed

- 23 -

charges to a defendant. This is accomplished by section 775.15(4)(b), which provides that the filing of an information only satisfies this substantive, statutory time limitation if the "capias, summons, or other process issued on such indictment or information is executed without unreasonable delay." Applying these provisions to this case shows that the State had until November 6, 2017, within which to file an information charging the crime and was also granted a "reasonable" amount of time thereafter within which to notify Born-Suniaga of the charge, before the trial could be barred based upon the passage of time. The State acted well within these substantive deadlines.

Under the majority's interpretation of rule 3.191, the time frame within which the State had to notify the defendant of the charges against him was shortened from more than three years (the three-year statute of limitations plus the reasonable period thereafter within which to give notice), as provided by general law, to less than six months (175 days with no additional time within which to give notice), as provided by the majority—radically truncating the statute of limitations and notice provisions enacted by the Legislature. For the judiciary to truncate the legislatively enacted statute of limitations and notice provision from more than three years to less than six months without raising constitutional concerns, there should be a constitutional basis for our action. *See Boyd*, 627 So. 2d at 484. The authority to promulgate procedural rules, standing alone, necessarily cannot

- 24 -

authorize us to trump the Legislature's substantive-law decision that the State is to be granted three years in which to file a charge of tampering with a witness (and a reasonable time thereafter in which to notify the defendant of the charge). *See id.*

I will address each of those possible sources of authority, in turn, and explain why none of them supplies a reasoned justification for the judiciary to shorten the statute of limitations under the guise of procedural rulemaking.

**B. Due Process Clause, Fourteenth Amendment, United States Constitution.**

The Fourteenth Amendment Due Process Clause protects against an oppressive delay between the commission of a crime and the arrest of the accused or filing of an information or indictment. *See United States v. Lovasco*, 431 U.S. 783, 789 (1977). If a truncated statute of limitations (and notice period) were necessary to protect the due process rights of those arrested for criminal conduct, the Due Process Clause could justify a procedural rule shortening the time frame for notice from over three years to 175 days after arrest—as the majority has held. However, the United States Supreme Court has made clear that separation of powers concerns dictate deference to the legislative and executive branches of government, in most cases, when it comes to the time taken to prosecute a case. *Id.*

With respect to the legislative branch, the Supreme Court has held that "statutes of limitations . . . provide 'the primary guarantee against bringing overly

- 25 -

stale criminal charges.' " *Id.* (quoting *United States v. Marion*, 404 U.S. 307, 322

(1971)).  With respect to the executive branch, the Supreme Court explained:

> [P]rosecutors do not deviate from "fundamental conceptions of justice" when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause.  *It should be equally obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt.  To impose such a duty "would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself." United States v. Ewell*[, 383 U.S. 116, 120 (1966)].  From the perspective of potential defendants, requiring prosecutions to commence when probable cause is established is undesirable because it would increase the likelihood of unwarranted charges being filed, and would add to the time during which defendants stand accused but untried.  These costs are by no means insubstantial since, as we recognized in *Marion*, a formal accusation may "interfere with the defendant's liberty, . . . disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends."  404 U.S. [at 320].  From the perspective of law enforcement officials, a requirement of immediate prosecution upon probable cause is equally unacceptable because it could make obtaining proof of guilt beyond a reasonable doubt impossible by causing potentially fruitful sources of information to evaporate before they are fully exploited.  And from the standpoint of the courts, such a requirement is unwise because it would cause scarce resources to be consumed on cases that prove to be insubstantial, or that involve only some of the responsible parties or some of the criminal acts.  Thus, no one's interests would be well served by compelling prosecutors to initiate prosecutions as soon as they are legally entitled to do so.

*Lovasco*, 431 U.S. at 790-92 (footnotes omitted) (emphasis added); *see also id.* at

792 (concluding that adopting the rule that "once the Government has assembled

sufficient evidence to prove guilt beyond a reasonable doubt, it should be

- 26 -

constitutionally required to file charges promptly, even if its investigation of the entire criminal transaction is not complete . . . would have many of the same consequences as adopting a rule requiring immediate prosecution upon probable cause").

For the reasons explained in *Lovasco*, the Due Process Clause cannot justify this Court's shortened 175-day time-frame for notifying Born-Suniaga of his witness-tampering charge. *See id.* Rather, a prosecutor should be able to file a "no information" after an arrest, as was done here, and should then have the amount of time granted by the Legislature, in substantive law, to file charges. *Id.* At that point, a defendant would need to show substantial and "actual prejudice" before a Due Process Clause excessive-delay claim would ripen. *Id.* at 789-90. In *Lovasco*, for example, the defendant testified that two material witnesses had died before the government filed charges against him. *Id.* at 785-86. Even then, prejudice from the government's "lengthy preindictment delay," standing alone, did not justify the dismissal of charges with prejudice, *id.* at 788-89, the remedy that this Court authorized in this case with no showing of prejudice.

As seen in the passages quoted from *Lovasco*, it is not simply that the Due Process Clause cannot justify a judicial shortening of the legislatively enacted statute of limitations; rather, the United States Supreme Court has condemned any attempt by the judiciary to interfere with the authority granted to the legislative and

executive branches in this area as having "a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself," *id.* at 791 (quoting *Ewell*, 383 U.S. at 120), and as being "unwise," *id.* at 792.

**C. Speedy Trial Clause, Sixth Amendment, United States Constitution.**

The Sixth Amendment Speedy Trial Clause protects against unreasonable delay in bringing a defendant to trial after his or her arrest or the filing of a charging document. *United States v. MacDonald*, 456 U.S. 1, 6-7 (1982). As with the Due Process Clause, a defendant must establish prejudice as a result of delay before there can be any consideration of dismissing charges under the Sixth Amendment Speedy Trial Clause. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). Again, because Born-Suniaga has not attempted to establish prejudice based upon delay in this case, he has no basis for even suggesting—and, indeed, he does not suggest—that the Sixth Amendment speedy trial right could justify dismissal of the charges in this case.

More importantly, the Sixth Amendment Speedy Trial Clause is "not primarily intended to prevent prejudice to the defense caused by passage of time." *MacDonald*, 456 U.S. at 8. Rather, it is primarily "designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while

released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *Id.* For this reason:

> *Once charges are dismissed, the speedy trial guarantee is no longer applicable.* At that point, the formerly accused is, at most, in the same position as any other subject of a criminal investigation. Certainly the knowledge of an ongoing criminal investigation will cause stress, discomfort, and perhaps a certain disruption in normal life. This is true whether or not charges have been filed and then dismissed. This was true in *Marion*, where the defendants had been subjected to a lengthy investigation which received considerable press attention. But with no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending. After the charges against him have been dismissed, "a citizen suffers no restraints on his liberty and is [no longer] the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer." [*Marion*, 404 U.S. at 321]. Following dismissal of charges, any restraint on liberty, disruption of employment, strain on financial resources, and exposure to public obloquy, stress and anxiety is no greater than it is upon anyone openly subject to a criminal investigation.

*Id*. at 8-9 (footnotes omitted) (emphasis added).

Clearly, Born-Suniaga had no substantive claim for dismissal under the Sixth Amendment Speedy Trial Clause based upon the State's decision to file a "no information" as to the battery charge, because that act meant that the constitutional speedy trial guarantee was "no longer applicable." *Id*. at 8. Nor did the State's decision to file an information charging a felony, along with the misdemeanor battery, in any way violate the speedy trial right. *See id*. at 8-9.

For these reasons, the Sixth Amendment Speedy Trial Clause cannot justify this Court's creation of an alternative substantive deadline, based solely upon the passage of time, within which the State must file charges and give notice of those charges to a defendant. And, again, it is not just that the Speedy Trial Clause cannot justify a judicial shortening of the legislatively enacted statute of limitations; rather, when one understands the speedy trial right it becomes apparent that Florida's speedy trial rule, as written, protects that right without requiring permanent discharge for failure to file charges and give notice within 175 days of arrest.

For example, consider a defendant arrested by police at or near the scene of a crime based upon a probable cause finding, as occurred here. Rule 3.191, as written, would require prosecutors to assess the case and either (1) file charges within 175 days if the State believed it could meet its burden of proof or (2) file a "no information" within 175 days if the State needed additional time for investigation.

What the majority does not seem to appreciate is that the filing of a "no information" within 175 days completely eliminates any constitutional speedy trial right issue. *Id.* at 8 ("Once charges are dismissed, the speedy trial guarantee is no longer applicable."). Then, if the State could gather the necessary evidence prior to the running of the statute of limitations, it could refile charges with no

- 30 -

constitutional speedy trial impediment. *See id.* at 8-9. As written, rule 3.191 would also protect the speedy trial right in the event of charges filed (or re-filed) after 175 days because the remedy provision would allow the defendant to immediately file a notice of expiration as soon as he or she is notified of the charges. Fla. R. Crim. P. 3.191(p)(2). By doing so, the defendant could then force the State to trial within two weeks—while facing the threat of permanent dismissal of the charges if the State cannot proceed in that time frame. Because subdivision (o), as read in harmony with the rest of the rule, does not allow the State to avoid permanent discharge by filing a nolle pros during the recapture period, the State could not risk filing charges more than 175 days after arrest unless it had marshalled the evidence it believed sufficient to prove the charges beyond a reasonable doubt.

**D.      Article V, Section 1, Florida Constitution.**

"The judicial power shall be vested in a supreme court, district courts of appeal, circuit courts and county courts." Art. V, § 1, Fla. Const. As a necessary corollary to their judicial power, courts have inherent authority to dismiss a case as the ultimate sanction for extreme misconduct. *See Rose v. Palm Beach County*, 361 So. 2d 135, 138 (Fla. 1978) ("Every court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction, subject to valid existing laws and constitutional provisions."); *State*

*v. Williams*, 623 So. 2d 462, 467 (Fla. 1993) ("[T]he only appropriate remedy to deter [the] outrageous law enforcement conduct [of illegally manufacturing the drugs sold to the defendant during a reverse-sting operation] is to bar the defendant's prosecution."). That power is generally unrelated to the passage of time, or delay, but generally also requires specific findings not present here that the State has violated a constitutional right of the accused. *See, e.g.*, *id.* at 463 ("[T]he illegal manufacture of crack cocaine by law enforcement officials for use in a reverse-sting operation . . . constitutes governmental misconduct which violates the due process clause of the Florida Constitution.").

The majority cannot justify its summary-dismissal-with-prejudice procedure based upon the inherent authority of the judiciary because neither the State's voluntary dismissal of a case nor the filing of new charges based upon the same criminal conduct, within the statute of limitations period, violates any constitutional right of the accused—and cannot be classified as misconduct. *MacDonald*, 456 U.S. at 8-9; *Lovasco*, 431 U.S. at 790-95, 793-95.

In this case, for example, there is no evidence of misconduct associated with sealing the record of Born-Suniaga's new charges. Although the Florida Rules of Criminal Procedure did not require the clerk to seal the record, *see Born-Suniaga*, 219 So. 3d at 76 n.2, the allegations of witness tampering and battery in Born-Suniaga's case underscore that there were good policy reasons for doing so,

including the safety of the officers executing the warrant and the safety of the victim, whom Born-Suniaga allegedly battered in an attempt to prevent the victim "from reporting a noise complaint to law enforcement." *Id.* at 75.

**E.      Article V, Section 2, Florida Constitution.**

Article V, section 2 of the Florida Constitution authorizes this Court to "adopt rules for the practice and procedure in all courts." Procedural rules provide order to the justice system and are primarily judged by two standards.

First, it is axiomatic that procedural rules should be written in a manner that assures procedural due process to all parties. *See Pressley v. Wainwright*, 367 So. 2d 222, 223 n.10 (Fla. 1979) (England, C.J., dissenting) ("It is, of course, self-evident that our appellate rules provide procedural due process . . . ."); *see also State v. Diaz de la Portilla*, 177 So. 3d 965, 968 (Fla. 2015) (recognizing that the procedural rules governing indirect criminal contempt reflect the required "procedural due process safeguards") (citation omitted).

Although the "guarantee of due process, viewed in its procedural aspect, requires no particular form of procedure . . . [d]ue process [does] require[] . . . that certain safeguards exist in whatever procedural form it is afforded." 16B *Am. Jur. 2d Constitutional Law* § 961 (2009) (footnotes omitted). The essential elements of these constitutionally required procedural safeguards are "reasonable notice" and "a fair opportunity to be heard before the issues are decided." *Id.*

- 33 -

Given that the raison d'être of procedural rules is to provide procedural due process to all parties, the irony of using case law to judicially rewrite a procedural rule so that it sanctions a party who followed the letter of the rule—and did no wrong—by throwing out its case with prejudice, is rich.

Born-Suniaga did not have a procedural "right" to discharge without affording the State a recapture period because that is not the remedy set forth in rule 3.191. That is the way procedural rights have to be created and applied—by the letter of the rule—because reading a procedural rule differently than it is plainly written, to the benefit of one party and the detriment of another, is contrary to the Due Process Clause.

Second, as already discussed, it is axiomatic that the judicial branch cannot create or abridge substantive law under the guise of procedural rulemaking because doing so would violate the separation of powers doctrine. *See generally Boyd*, 627 So. 2d at 484 (explaining that this Court's rulemaking authority "is limited to rules governing procedural matters and does not extend to substantive rights" such as "statutes of limitation [that] supersede [this Court's] procedural rules"). But that is exactly what this Court did in *Agee* and does again today by extending *Agee* to require summary dismissal with prejudice in this case, even though the State filed its information and gave notice to Born-Suniaga well within the time periods required by substantive law.

- 34 -

In essence, this Court has taken an arbitrary procedural time frame designed to trigger a specific procedural "remedy" (aimed at providing an orderly mechanism for protecting the constitutional speedy trial rights of an accused, consistent with due process for all parties) and elevated that arbitrary procedural time frame into a substantive right pursuant to which the State must file charges and give notice of those charges within 175 days after arrest in all cases—thereby truncating and trumping the statute of limitations and notice deadlines created by the Legislature.

Even setting aside separation of powers concerns, consider how this Court's prior dubious interpretation of our speedy trial rule could thwart "the ability of society to protect itself" in a hypothetical murder case. *Lovasco*, 431 U.S. at 791 (quoting *Ewell*, 383 U.S. at 120). It is not hard to imagine a first-degree murder case in which two suspects are arrested based upon conclusive evidence that they—and no one else—were with the victim in her house when she was murdered using a knife (or knives), with multiple stab wounds inflicted. As soon as the two are identified, police secure a warrant and arrest them for the murder. Of course, even conclusive circumstantial evidence that at least one of the suspects had to have murdered the victim would be insufficient to convict either of them. *See generally State v. Reddick*, 568 So. 2d 902, 903 n.2 (Fla. 1990) (recognizing the State's burden to prove that "the defendant caused the [victim's] death" as one of

- 35 -

the three elements of first-degree murder). If investigators were unable to locate evidence sufficient to prove beyond a reasonable doubt which one of the defendants committed the murder (or that both were involved) as the 175-day speedy trial deadline approached, the prosecutor would have to file a "no information," and both suspects would be released without condition—satisfying all protections afforded by the Speedy Trial Clause. *MacDonald*, 456 U.S. at 8-9. However, *Agee* would prevent further prosecution even if, a few days later, one of the suspects confessed and turned over a video showing both repeatedly stabbing the defendant with similar knives. Although the "no information" would have protected the killers' constitutional speedy trial rights without permanent discharge (applying rule 3.191 as written), this Court's precedent would forever thwart the State's ability to punish the killers and protect society from two violent criminals because it misinterprets the rule as creating a substantive 175-day time bar to prosecution—contrary to the Legislature's determination that "prosecution for a capital felony, a life felony, or a felony that resulted in a death may be commenced at any time." § 775.15(1).

There is no way to know how many times this Court's misinterpretation of rule 3.191 has resulted in discharge without trial or acted to bar further prosecution in cases dropped by the State where evidence was later secured that would have otherwise allowed prosecution within the statute of limitations period. However, it

is clear from this Court's opinions, and from other appellate decisions applying this Court's precedent, that the 175-day period has been used as a substantive, permanent bar to prosecution, and without affording the State a recapture period, in cases involving charges of theft,[5] assault,[6] drug trafficking,[7] armed robbery,[8] sex crimes against children,[9] and murder.[10]

**CONCLUSION**

Rule 3.191, as written, protects the defendant's substantive Sixth Amendment speedy trial guarantee. I would read and apply the rule as written, approve the Fourth District's decision, and avoid the constitutional concerns inherent in the majority's contrary decision. If there is a constitutional basis for this Court to interfere with the legislative branch's policy decision as reflected in our statutes of limitation, or to interfere with the executive branch's role in

---

5. *Genden v. Fuller*, 648 So. 2d 1183 (Fla. 1994); *Pearson v. State*, 18 So. 3d 645 (Fla. 1st DCA 2009); *State v. Hurley*, 760 So. 2d 1127 (Fla. 4th DCA 2000).

6. *Williams v. State*, 946 So. 2d 1163 (Fla. 1st DCA 2006); *Von Waldner v. State*, 860 So. 2d 1061 (Fla. 5th DCA 2003).

7. *Griggs v. State*, 994 So. 2d 1198 (Fla. 5th DCA 2008).

8. *Reed v. State*, 649 So. 2d 227 (Fla. 1995); *Trainer v. Broome*, 666 So. 2d 1019 (Fla. 4th DCA 1996).

9. *Hernandez v. State*, 513 So. 2d 155 (Fla. 2d DCA 1987).

10. *Butler v. State*, 84 So. 3d 419 (Fla. 5th DCA 2012); *Walden v. State*, 979 So. 2d 1206 (Fla. 4th DCA 2008).

enforcing the law within the substantive framework set forth by the Legislature, I cannot find it.

CANADY, C.J., concurs.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

Fourth District - Case No. 4D15-4853

(Broward County)

A. Randall Haas, Fort Lauderdale, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, Celia Terenzio, Bureau Chief, and Kimberly T. Acuña, Assistant Attorney General, West Palm Beach, Florida,

for Respondent