# Supreme Court of Florida

---

No. SC2023-1749

---

**JEROMEE SAFFOLD,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

March 19, 2026

GROSSHANS, J.

Can a defendant whose sentence is vacated on direct appeal withdraw his underlying plea for good cause prior to the imposition of a new sentence on remand?  The Fourth District Court of Appeal answered this question in the negative, certifying conflict with the Second District Court of Appeal's contrary position.  *Saffold v. State* (*Saffold II*), 374 So. 3d 836, 840-41 (Fla. 4th DCA 2023).  As detailed below, we agree with the Fourth District and hold that

Florida Rule of Criminal Procedure 3.170(f)'s good-cause standard does not apply during post-appeal resentencing proceedings.[1]

I

Early one morning, Jeromee Saffold picked up a young woman and offered to drive her home. He instead drove her to a Wal-Mart parking lot. There, while armed and threatening violence, Saffold forced the victim to have vaginal, anal, and oral sex with him.

He then drove the victim, against her will, to a nearby apartment complex, demanding that she perform oral sex on him while in transit. Upon their arrival, Saffold demanded further sexual acts from the victim and used her cell phone to record them. He again coerced those acts by threatening violence—against both the victim and her family—and bludgeoning her in the head with a firearm. Eventually, the victim escaped. She then alerted law enforcement, who arrested Saffold at the apartment complex.

Based on these events, the State charged Saffold with seven crimes: five counts of armed sexual battery, one count of kidnapping with intent to facilitate a felony, and one count of

_____

1. We have jurisdiction. *See* art. V, § 3(b)(4), Fla. Const.

aggravated battery with a deadly weapon. *Saffold II*, 374 So. 3d at 837.

Saffold pled no contest to all seven crimes as charged. At sentencing, Saffold requested a 25-year sentence—which, if imposed, would have been a departure from his lowest permissible sentence of roughly 51 years in prison. The prosecutor argued against a downward departure and contended that a life sentence was appropriate.

Ultimately, the trial court declined to sentence Saffold below the presumptive statutory baseline, citing the horrific details of the crimes he committed. Saffold was sentenced to six separate life sentences (each with a minimum mandatory of 25 years) and one 15-year term of imprisonment.

Saffold appealed. *Id.* Crediting some of Saffold's arguments, the Fourth District found several sentencing errors. *Saffold v. State* (*Saffold I*), 310 So. 3d 55, 57-58 (Fla. 4th DCA 2021). Consequently, it directed the trial court to modify Saffold's scoresheet, remove certain designations and mandatory minimums from a portion of his sentences, reconsider his request for

downward departure, and resentence him on two of the five armed sexual-battery counts. *Id.* at 57 & n.1, 58.

On remand, Saffold moved to withdraw his pleas to all seven counts, arguing that he had good cause under Florida Rule of Criminal Procedure 3.170(f). *Saffold II*, 374 So. 3d at 838. This rule provides that "[t]he court . . . shall on good cause, at any time before a sentence, permit a plea of guilty or no contest to be withdrawn." Fla. R. Crim. P. 3.170(f). The trial court denied the motion and reimposed the same overall prison terms—albeit structured differently and without certain designations and mandatory minimums. *Saffold II*, 374 So. 3d at 838.

Saffold again appealed, but the Fourth District affirmed with a lengthy discussion of the Second District's contrary position. *Id.* at 838-39 (assessing rationale of *Scott v. State*, 331 So. 3d 297, 300-01 (Fla. 2d DCA 2021)). In *Scott*, the Second District held that subdivision (f)'s good-cause standard could apply after sentencing relief was granted because that subdivision uses the phrase "a sentence." *Scott*, 331 So. 3d at 300-01. In the Second District's view, the indefinite article "a" meant that subdivision (f) covers any sentencing proceeding, "whether that be the initial sentencing or a

- 4 -

subsequent resentencing." *Id.* at 301. The *Scott* court also emphasized the background legal principle that "when a defendant is granted resentencing, the original sentence is rendered a nullity and the sentencing process begins anew." *Id.* Finally, the Second District relied on cases holding that rule 3.170(*l*)'s post-sentencing standard applies after a defendant has been resentenced. *Id.* (citing *Chipman v. State*, 285 So. 3d 1005, 1006 (Fla. 2d DCA 2019), and *Passino v. State*, 174 So. 3d 1055, 1056-57 (Fla. 4th DCA 2015), as examples of courts holding that "the completion of resentencing starts a new thirty-day clock for a post[-]sentencing motion under rule 3.170(*l*)").

Disagreeing with *Scott,* the Fourth District held that subdivision (f) only applies to a defendant's original sentence. *Saffold II*, 374 So. 3d at 839-40. It found the rule's use of "a" to be ambiguous, observing that the rule's authors could have, but did not, choose the word "any." *Id.* at 839. And though the court acknowledged that "resentencing is treated as a new sentencing proceeding," it found that this principle "does not negate the fact that the defendant has already had a sentence imposed." *Id.* (emphasis omitted). The court also found that the Second District's

- 5 -

reliance on post-resentencing precedent was misplaced. *Id.* Rounding out its criticism of *Scott*, the court noted that the Second District's position was inconsistent with principles of finality and would likely frustrate the State's ability to secure convictions at a trial many years after the crimes were committed. *Id.* at 839-40.

Consistent with that analysis, the Fourth District concluded that Saffold was not entitled to withdraw his plea under subdivision (f). *Id.* at 840. The court went on to certify conflict with *Scott* on the appropriate plea-withdrawal standard where the original sentence is vacated on appeal or in postconviction proceedings, but the conviction remains intact. *Id.* at 841.

Relying on the certified conflict, Saffold asked us to review the Fourth District's decision. We have accepted review and now resolve the certified-conflict issue.

## II

Saffold argues that when a sentence is vacated on appeal, the underlying plea may be withdrawn for good cause prior to resentencing, pursuant to rule 3.170(f).[2] However, to grant Saffold

---

2. Determining the meaning and scope of rule 3.170(f) is a legal matter, which we review de novo. *See Born-Suniaga v. State,*

- 6 -

the remedy he seeks, we would be required to infer an independent rules-based exception to longstanding principles of finality, scope of remand, and conviction validity. We decline to do so.

A

We begin by briefly outlining the varying standards governing plea withdrawal at different stages of a criminal case. A defendant may withdraw his plea for any reason before the court formally accepts it. Fla. R. Crim. P. 3.172(g). Once the court accepts the plea, a defendant may withdraw it "before a sentence" is imposed if he can show "good cause." Fla. R. Crim. P. 3.170(f).

However, following rendition of the sentence, the standard becomes more stringent. At that point, a plea can only be withdrawn for five specified reasons listed in rule 9.140 of the

---

256 So. 3d 783, 786 n.2 (Fla. 2018). Both parties point to various grammatical components of rule 3.170(f) as support for their positions. Consistent with what we have expressed about our interpretative methods, we also consider the overall structure of the rules, as well as the background legal principles against which the rules operate as bearing on the proper meaning of the rule. *E.g.*, *Campbell v. State*, 125 So. 3d 733, 742 (Fla. 2013) (considering longstanding principle of finality in determining meaning of rule 3.172).

Florida Rules of Appellate Procedure.[3]  *See* Fla. R. Crim. P. 3.170(*l*).

We have used the terms "manifest injustice" or "prejudice" to

describe what a defendant must show to obtain relief in this post-

sentencing context.  *See Campbell v. State*, 125 So. 3d 733, 735

(Fla. 2013).  Finally, on collateral review, a defendant can only

challenge his plea on the basis that it was involuntary.  Fla. R.

Crim. P. 3.850(a)(5).

These rules reflect that early in a criminal case, a defendant

has the most freedom in seeking to withdraw a plea—consistent

with a preference for trial on the merits.  Fla. R. Crim. P. 3.172(g);

Fla. R. Crim. P. 3.170(f); *Stewart v. State*, 315 So. 3d 756, 758 (Fla.

4th DCA 2021).  But as the case proceeds, the grounds for

---

3.  Rule 9.140(b)(2)(A)(ii) specifically provides:

A defendant who pleads guilty or nolo contendere may otherwise directly appeal only:

a. the lower tribunal's lack of subject matter jurisdiction;
b. a violation of the plea agreement, if preserved by a motion to withdraw plea;
c. an involuntary plea, if preserved by a motion to withdraw plea;
d. a sentencing error, if preserved; or
e. as otherwise provided by law.

withdrawal narrow, and the required showing becomes more demanding. Fla. R. Crim. P. 3.170(*l*); Fla. R. Crim. P. 3.850(a)(5). Notably, in postconviction proceedings—meaning those proceedings instituted after the judgment achieves finality and an appellate court has issued its mandate—only one limited ground for withdrawal is authorized. Fla. R. Crim. P. 3.850(a)(5). This progression illustrates that finality interests are built into the rules, including rule 3.170(f) at issue here.

This makes sense because finality interests are essential to the criminal justice system. *See Teague v. Lane*, 489 U.S. 288, 309 (1989) ("Without finality, the criminal law is deprived of much of its deterrent effect."); *Witt v. State*, 387 So. 2d 922, 925 (Fla. 1980) ("The importance of finality in any justice system, including the criminal justice system, cannot be understated."); *Calderon v. Thompson*, 523 U.S. 538, 555 (1998) ("Finality is essential to both the retributive and the deterrent functions of criminal law."); *Prost v. Anderson*, 636 F.3d 578, 582 (10th Cir. 2011) ("The principle of finality, the idea that at *some* point a criminal conviction reaches an end, a conclusion, a termination, 'is essential to the operation of our criminal justice system.' " (quoting *Teague*, 489 U.S. at 309)).

- 9 -

Underscoring the importance of this principle, the Florida Constitution guarantees victims the right to a "prompt and final conclusion of the case and any related postjudgment proceedings." Art. I, § 16(b)(10), Fla. Const. And as noted by Justice John Marshall Harlan II, "No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved." *Williams v. United States*, 401 U.S. 667, 691 (1971) (Harlan, J., concurring in the judgments in part and dissenting in part).

With this background in mind, we consider Saffold's argument that focuses on the use of "a" in rule 3.170(f)'s description of the sentence. According to Saffold, nothing in the text limits application of the rule to the original sentence. Thus, as he sees it, rule 3.170(f) broadly applies to any sentence, including one imposed at resentencing following appellate or collateral proceedings. But as our discussion above demonstrates, the hyper-technical position Saffold advances is at odds with the principles of law against which rule 3.170 was adopted. In fact, the very structure and context of

- 10 -

the plea-withdrawal rules, and the interests of finality served by them, strongly cut against the interpretation urged by Saffold. Notwithstanding this, Saffold points to our precedent that speaks to the effect of vacatur of a sentence. But as we explain below, those cases do not support his position.

B

As Saffold correctly observes, we have recognized that resentencing is a de novo proceeding. *See, e.g., State v. Manago*, 375 So. 3d 190, 202 (Fla. 2023); *State v. Fleming*, 61 So. 3d 399, 405-08 (Fla. 2011); *Preston v. State*, 607 So. 2d 404, 408 (Fla. 1992). Indeed, we recently stated that a sentence vacatur "nulli[fies]" the "prior sentence," *State v. Okafor*, 306 So. 3d 930, 933 (Fla. 2020) (quoting *Teffeteller v. State*, 495 So. 2d 744, 745 (Fla. 1986)), or "wipe[s] the slate clean" as to the vacated sentence. *Id.* (quoting *Pepper v. United States*, 562 U.S. 476, 507 (2011)).

In light of that legal effect, de novo resentencing thus means that the parties may present new evidence and new arguments about the proper sentence to be imposed. *Fleming*, 61 So. 3d at 406 ("[B]oth parties may present new evidence bearing on the sentence."); *Shine v. State*, 273 So. 3d 935, 937 (Fla. 2019)

(defendant permitted to assert new grounds for downward departure sentence at resentencing). Not surprisingly, then, the resentencing judge is not bound by the prior sentencing judge's findings or rationale. *Preston*, 607 So. 2d at 409; *State v. Collins*, 985 So. 2d 985, 990 (Fla. 2008). And where the law has changed, the resentencing judge applies the new law. *Fleming*, 61 So. 3d at 407.

Critically, these de novo resentencing principles say nothing about the validity of the convictions upon which the sentences are based. We made this very point in *Okafor*. There, we noted that the concept of de novo resentencing does not extend to the conviction—that is, the conviction remains completely intact. *See Okafor*, 306 So. 3d at 933 ("[A]s to Okafor's death sentence (though *not* his murder conviction), our judgment 'wiped the slate clean.' " (emphasis added) (quoting *Pepper*, 562 U.S. at 507)). And this makes sense because any post-appeal alteration to the conviction itself would be beyond the scope of the remand instruction. *Mosley v. State*, 397 So. 3d 1001, 1005 (Fla. 2024) (noting that defendant's attack on his conviction was beyond the scope of remand that pertained solely to the penalty for the relevant offense).

Accordingly, these prior cases do not support Saffold's position that the resentencing process operates as an indirect way of attacking final convictions and circumventing the stringent requirements of the rules governing postconviction proceedings.

C

Having rejected Saffold's effect-of-vacatur argument, we underscore a rule of construction that further weakens Saffold's argument. Specifically, rule 3.020 requires that all rules of criminal procedure be construed "to secure simplicity in procedure and fairness in administration." Fla. R. Crim. P. 3.020. Saffold's interpretation would accomplish neither of these directives and would instead hinder the administration of justice.

Consider, for example, defendants who obtain vacatur of their sentences years after their pleas. If such defendants can get the benefit of a liberal plea-withdrawal rule, then those defendants would essentially have two bites at the apple. They could seek plea withdrawal before the initial sentence is imposed and, if unsuccessful, rely on the same ground (or a new one) in seeking withdrawal prior to a resentencing and without any procedural

bars.[4] Alternatively, under Saffold's reasoning, a defendant could (upon sentence vacatur) seek plea withdrawal for the first time years after his plea was entered and still rely on the more lenient good-cause standard.

However, regardless of the reason offered for the post-appeal plea withdrawal (and whether it was or could have been raised earlier), embracing Saffold's interpretation of rule 3.170(f) would result in the vacatur of convictions previously affirmed on appeal. This, in turn, would require the State to prove its case many years after the fact—when memories have faded, potential witnesses have died or otherwise become unavailable, and physical evidence has been lost. *Campbell*, 125 So. 3d at 742 (noting such factors in rejecting an expansive interpretation of a plea rule).

Besides these concerns, Saffold's position creates an anomaly. Under his view, plea-based convictions that become final after an appeal are less durable than comparable convictions obtained through a trial. *See Love v. State*, 559 So. 2d 198, 200 (Fla. 1990)

---

4. At oral argument, Saffold's counsel conceded that under his view, a convicted defendant could assert good cause based on something that happened before the original sentence. Oral Arg. at 5:20-25.

- 14 -

(convictions obtained at trial remained intact despite sentence-related reversal). But we can think of no principled reason for that difference. An interpretation that treats similarly situated convicted defendants differently would not promote "fairness" in the administration of justice. Fla. R. Crim. P. 3.020. Moreover, Saffold's reading of the rule also creates tension with other rules, such as rule 3.170(b) which contemplates multi-case, multi-jurisdictional plea agreements. Saffold's theory of rule 3.170(f) raises questions about whether the withdrawal of any one plea would unravel an entire bargain.

These potentially anomalous and illogical outcomes weigh against the interpretation advanced by Saffold. *See Campbell*, 125 So. 3d at 741 (favoring a construction in plea-withdrawal context that did not produce absurd result).

We acknowledge the cases marshalled by Saffold on this topic. Certainly, some state and federal courts have accepted positions comparable to the one Saffold advocates for here. Though we are not convinced that these courts are correct, we think that our plea-withdrawal rules and our emphasis on certain background principles (such as finality) distinguish us from these other courts.

Thus, we do not rely on Saffold's cited cases in determining the scope and meaning of our rules.[5]

## III

Given the background principles of law against which the rules were adopted, as well as the overall structure of the criminal rules of procedure and the method of construction dictated by them, we reject Saffold's interpretation of rule 3.170(f). In doing so, we approve the Fourth District's decision below and disapprove the Second District's decision in *Scott* to the extent it is inconsistent with our opinion today.

It is so ordered.

MUÑIZ, C.J., and COURIEL, FRANCIS, and SASSO, JJ., concur.
TANENBAUM, J., concurs with an opinion.
LABARGA, J., concurs in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

TANENBAUM, J., concurring.

This case stems from a district-court conflict over a procedural

---

5. Following the *Scott* decision's lead, Saffold also cites Florida cases stating that subdivision (*l*) applies after a new sentence is imposed on resentencing. The meaning of that rule is not something we must resolve in this case. Accordingly, we offer no comment on the correctness of those cases.

rule's meaning. A close textual treatment is not necessary to resolve it. It is our rule, after all; and as such it is our statement of extant judicial policy. *See* Art. V, § 2(a), Fla. Const. (giving this court the authority to "adopt rules for the practice and procedure in all courts," including "administrative supervision"). Though it cannot itself be the source of a substantive right, the rule has the force of "law" procedurally in court proceedings. *See DeLisle v. Crane Co.*, 258 So. 3d 1219, 1224–25 (Fla. 2018) (explaining the difference between "procedural law"—this court's domain—and "substantive law"—the Legislature's domain).

The rule being procedural law adopted by this court, we can modify, create, or repeal it at any time, even *sua sponte* as part of a court decision or otherwise. *See generally In re Amends. to Fla. Evidence Code*, 278 So. 3d 551 (Fla. 2019) (adopting *sua sponte* the *Daubert* standard for admissible expert opinion testimony via amendments to evidentiary rules in an opinion); *see also id.* at 554–55 & n.8 (Lawson, J., concurring) (cataloging instances when the court has "adopt[ed] or amend[ed] rules on our own motion . . . without following the general procedure outlined in rule 2.140"); *DeLisle*, 258 So. 3d at 1229 (noting that this court may pronounce

a procedural rule as part of an opinion).  If that is the case, our approach to a dispute over the meaning of a rule necessarily will differ from our approach regarding the meaning of a statute.  Unlike statutes, with court rules, *we* are the policymaker, so there are no separation-of-powers concerns that would warrant a textualist (or originalist) approach.[6]  *Cf.* ANTONIN SCALIA, A MATTER OF INTERPRETATION: FEDERAL COURTS AND THE LAW 9–14 (1997) (railing against "judge-made law" as a "usurpation" of legislative power); *id.* at 23 ("To be a textualist in good standing . . . [o]ne need only hold the belief that judges have no authority to pursue [] broader [social] purposes or write [] new laws [that the times require].");  ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS xxvii–xxx, 3–28 (2012) (explaining why a textualist approach is necessary to guard against "judicial lawmaking").  We have the

---

6.  Our being the policymaker also means we happen to know what our intent was when the rule was promulgated (or at least have access to that thinking if we care to look).  *Cf. In re Amends.*, 278 So. 3d at 555 n.8 (Lawson, J., concurring) (looking to "our internal court records" to understand "the internal court process that" produced the rule provision in question).

authority unabashedly to announce or clarify our policy embodied in a rule and to apply it to the case at hand.

That, in essence, is what we are called upon to do here. The Second District and the Fourth District disagree on how to apply Florida Rule of Criminal Procedure 3.170(f). The question we answer to resolve that conflict is whether, through that rule, we intended to authorize the trial court to consider a plea-withdrawal motion—one necessarily directed at the judgment of conviction, not the sentence—once the judgment has become absolutely final and the only appellate remand is for resentencing. The question nearly answers itself. At all events, it truly is a matter of judicial policy, and we can speak to it directly without resort to construction canons.

At bottom, there are two implicit policy points essential to this court's approval of the Fourth District's analysis, both of which I agree with. First, the Fourth District's judgment in *Saffold I*[7]—addressing only the sentencing order and remanding to address several sentencing errors—had no effect on the judgment of

_____

7. *Saffold v. State*, 310 So. 3d 55 (Fla. 4th DCA 2021).

- 19 -

conviction, which had not been appealed and became final. Second, rule 3.170(f) fully reflects this court's policy choice to imbue an un-appealed or affirmed judgment of conviction with absolute finality—such that a defendant is "not entitled to bring a motion to withdraw a plea pursuant to rule 3.170(f) upon court-ordered resentencing." *Saffold v. State* ("*Saffold II*"), 374 So. 3d 836, 840 (Fla. 4th DCA 2023).

I write to expand on both these points. But first, I address an oddity behind the Fourth District's disposition of this case.

## I

## A

In 2019 Jeromee Saffold pleaded no contest to the charges against him in the underlying case. The trial court then rendered a judgment that conclusively determined his guilt for armed sexual battery, aggravated battery, and kidnapping. Though Saffold appealed the sentence the trial court later imposed, *he never appealed the judgment of conviction.* The Fourth District considered that original appeal as one seeking review only of "his sentences,"

which it purportedly affirmed in part and vacated in part. *Saffold I*, 310 So. 3d at 56–57.[8]

Following Saffold's resentencing on remand, he once again appealed *only the new sentences imposed.*[9] Saffold nevertheless challenged the trial court's denial of his motion to withdraw his plea using the rule interpretation set out in *Scott v. State*, 331 So. 3d 297 (Fla. 2d DCA 2021), in which the Second District held that rule 3.170(f) entitled a criminal defendant to consideration of a motion to withdraw his plea on resentencing.[10]

---

8. I characterize the Fourth District's disposition this way because it is remarkably unclear. In the body of the opinion, the Fourth District "affirm[s] the sentence" on appeal (but remanding for correction of the scoresheet) as to one count; "reverse[s] the inclusion of the sexual penetration points on counts IV and V" and remanding for resentencing (without vacating the sentence itself); and "reverse[s] the court's denial of the motion for reconsideration of the downward departure motion" (without any indication whether the sentence on appeal that might have been affected by that departure had been vacated). *Saffold I*, 310 So. 3d at 57–58. What is clear is that the Fourth District's remand had nothing to do with the judgment of conviction, which was left intact as final.

9. Saffold's notice stated he was appealing the "final order imposing sentence."

10. In that decision, with which the Fourth District has certified conflict, the Second District also considered only a newly imposed sentence on appeal—not the judgment of conviction.

- 21 -

As I just mentioned, the final order on appeal was the sentence. Yet one of Saffold's primary claims was that the trial court's ruling *on his motion* should be reversed. The Fourth District, unfortunately, took him up on this invitation, analyzing and rejecting Saffold's argument for doing so and *affirming the order* (rather than the sentencing order on appeal).[11] The Fourth District disagreed in an opinion that is in direct conflict with *Scott.*

B

A district court of appeal has jurisdiction to consider only two types of appeal: 1) "from final judgments or orders of trial courts"; and 2) "interlocutory orders in such cases to the extent provided by rules adopted by" this court. Art. V, § 4(b)(1), Fla. Const. The order denying Saffold's plea motion was neither of these, so it could not independently have been subject to appellate review the way the Fourth District suggested.

Take the second type first. As the court recently stated, "there are very few circumstances where interlocutory appeals are

---

11. In doing this, the Fourth District made a dispositional mistake similar to the one that I described regarding *Saffold I.*

authorized in criminal proceedings." *In re Amends. to Fla. R. of App. Proc.*, 405 So. 3d 332, 333 (Fla. 2025). This order is not one of them. *Cf.* Fla. R. App. P. 9.130(a)(2) ("Appeals of nonfinal orders in criminal cases are prescribed by rule 9.140."); Fla. R. App. P. 9.140(b)(1)(C), (D) (listing as appealable certain arguably non-final "orders" pertaining to imposition, modification, and revocation of probation); Fla. R. App. P. 9.140(c)(1) (listing, among others, non-final "orders" that the State may appeal).

For plea cases like this one, we list by rule the only *issues* that can be raised as part of an appeal from the judgment and sentence; we do not list non-final orders that are separately appealable. *See* Fla. R. App. P. 9.140(b)(2)(A)(i) (identifying a reserved "prior dispositive order" that may be considered on appeal from a final order but otherwise identifying the only *issues* that may be raised in an appeal from a final judgment rendered following a plea); *cf.* ABRAHAM CLARK FREEMAN, A TREATISE OF THE LAW OF JUDGMENTS 46–47 (EDWARD W. TUTTLE REV., 5TH ED. 1925). This limitation on issues reflects our recognition that, though a defendant has a constitutional right to appeal his judgment of conviction, he has waived by plea most of the appellate claims he could otherwise

- 23 -

make in favor of reversing that judgment. *See Robinson v. State*, 373 So. 2d 898, 902–03 (Fla. 1979) (construing section 924.06, Florida Statutes, to be constitutional and holding that a defendant who has pleaded guilty is limited in his appeal "to a class of issues which occur contemporaneously with the entry of the plea"); *Leonard v. State*, 760 So. 2d 114, 116 (Fla. 2000) ("As with defendants who went to trial, defendants who plead guilty have a constitutional right to appeal, although the issues that they can raise on appeal are limited.").

If an order denying a plea-withdrawal motion is not an appealable non-final order, the only way it separately would be reviewable is in the first type of appeal—from "final judgments or orders of trial courts." The order on the plea-withdrawal motion is not that type of order.

In the criminal context, the two original final orders a criminal defendant can appeal are the judgment of conviction and a sentence, and he can seek appellate review of either or both. *See* Fla. R. App. P. 9.110(h) (providing that multiple final orders may be reviewed upon the filing of one timely notice of appeal); Fla. R. App. P. 9.140(b)(1)(A), (F) (distinguishing a criminal defendant's ability to

appeal "a final judgment" and "a sentence"); Fla. R. App. P. 9.140(b)(3) (directing a criminal defendant to file the notice of appeal "any time between rendition of a final judgment and 30 days following rendition of a written order imposing sentence"); Fla. R. Crim. P. 3.670 (distinguishing "a final judgment of conviction" from the imposition of a sentence); *cf.* Fla. R. Crim. P. 3.850(a), (c) (distinguishing a collateral attack on a "judgment" and on a "sentence"). The order denying Saffold's motion directed to his plea is neither type of original final order. *Cf.* Fla. R. Crim. P. 3.650 (defining "judgment" as "the adjudication by the court that the defendant is guilty or not guilty"); Fla. R. Crim. P. 3.700(a) (defining "sentence" to be "the pronouncement by the court of the penalty imposed on a defendant for the offense of which the defendant has been adjudged guilty").

The district court's judicial power—affirm, reverse, set aside—ultimately operates against the final order on review, that final order being the trial court's exercise of judicial power. As part of that review, the district court considers whether *that final order* is the product of some harmful error that the trial court committed in the proceeding leading to that final order. *Cf.* Fla. R. App. P.

9.110(h), (k).  A procedural error underlying an interim order might be violative of a substantive right that calls into question the validity of the final order (*i.e.*, undermining the fairness of the trial). *Cf. Richardson v. State*, 246 So. 2d 771, 774 (Fla. 1971) (explaining that "the violation of a rule of procedure prescribed by this Court does not call for a reversal of a conviction unless the record discloses that non-compliance with the rule resulted in prejudice or harm to the defendant").  If there is such a prejudicial error, then the district court would reverse or vacate that final order (not the offending interim order or ruling) and reopen the proceeding.  If there is no prejudicial error, the district court would affirm the final order (not the order or ruling that had been challenged).

The only order under review by the Fourth District in *Saffold II* was the new sentencing order—*not* the order on Saffold's plea-withdrawal request.  And the only relief available to Saffold would have been directed to the sentencing order, provided he could demonstrate some error in the sentencing process leading to the order (or in the order itself) that infringed a substantive right.  *Cf. Jackson v. State*, 983 So. 2d 562, 572–74 (Fla. 2008) (distinguishing between "errors in sentence-related *orders*" that result from the

"sentencing process," on the one hand; and an "error in the sentencing process" itself, on the other).

Saffold's initial brief in the Fourth District nevertheless failed to explain how denial of his change-of-plea motion in any way related to the new sentencing or how the denial infringed a right related to the sentencing process. Nor could he. The motion obviously was directed to the judgment of conviction in the trial court proceeding, yet that judgment was not (and could not be) on appeal. The motion simply had nothing to do with the only final order on review—the new sentence. The Fourth District could have just summarily affirmed the sentence. *See* Fla. R. App. P. 9.315(a) (allowing the appellate court to "summarily affirm the order to be reviewed if the court finds that no preliminary basis for reversal has been demonstrated").[12]

## II

Notwithstanding any jurisdictional questions, we are obliged to state with clarity that rule 3.170(*l*) does not authorize a trial court

_____

12. I put off for another day whether our certified-conflict jurisdiction can be rooted in a district court's analysis explaining its purported affirmance of a non-appealable (and non-appealed) order.

- 27 -

to consider a change-of-plea motion on a remand for a new sentencing. I join the majority's decision to do this and the policy rationale behind it—to ensure finality in the judgment.

Saffold's no-contest plea indeed had relevant legal significance. "Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence." *Kercheval v. United States*, 274 U.S. 220, 223 (1927). The plea "is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). By his no-contest plea, Saffold "consent[ed] to the judgment of conviction." *Williams v. State*, 316 So. 2d 267, 270–71 (Fla. 1975).

When Saffold did not appeal that judgment originally, it became final and absolute, and the trial court lost procedural jurisdiction to modify or vacate it. *See Einstein v. Davidson*, 17 So. 563, 564–65 (Fla. 1895) (noting how a trial court "loses control of its judgment[]" after an authorized time period passes so that it cannot modify or vacate that judgment outside that period, except by appellate mandate or authorized motion); *Davidson v. Stringer*, 147 So. 228, 229 (Fla. 1933) (noting that once a trial court renders a

final judgment and the time has passed for the court to reconsider it, the trial court's jurisdiction is "exhausted" except either to enforce it, or when authorized, to correct or vacate it); *Shelby Mut. Ins. Co. of Shelby, Ohio v. Pearson*, 236 So. 2d 1, 3 (Fla. 1970) (explaining that one of our goals "is that litigation be finally terminated as quickly as due process and necessary reflection allows . . . [so u]nless a proper motion or petition [directed at correcting error in a final judgment] is filed within the allotted time [as set out by rule], the judgment or order of the trial court becomes absolute" and "the trial court has no authority to alter, modify or vacate [it]"); *see also* FREEMAN, *supra*, at 392, 399–400; *cf. Baskin v. Klemm*, 160 So. 509, 509 (Fla. 1935) (explaining that once an appellate court's review of a trial court's judgment becomes final, the trial court is "without jurisdiction to change that judgment without first having permission . . . to so change or modify its judgment"); *State ex rel. Budd v. Williams*, 11 So. 2d 341, 341 (Fla. 1943) ("After affirmance of the decree by this court the circuit court was without jurisdiction to alter or change the decree as so affirmed without first having authority from this court to so act."); *cf. Wetmore v. Karrick*, 205 U.S. 141, 149 (1907) ("The general principle

is that judgments cannot be disturbed after the term at which they are rendered, and can only be corrected, if at all, by writ of error, or appeal, or relieved against in equity in certain cases."); *In re Metro. Tr. Co. of City of New York*, 218 U.S. 312, 320–21 (1910) (holding that a trial court loses the authority to vacate a final decree "[a]fter the term had expired, and after the complainant had exercised his right of appeal to procure a review of the errors of which he desired to complain").

By rule, we authorize trial courts to open their already rendered (and otherwise final) judgments in at least two different ways. One is to establish a time period, after rendition but before appeal, during which the trial court *retains* jurisdiction over the judgment; the other is to authorize consideration of a collateral attack on the judgment, even after the judgment has been affirmed on appeal and the trial court has lost jurisdiction over its judgment. *Cf.* FREEMAN, *supra*, at 377 (distinguishing between trial court's control over its own judgment "during the term" and its power to modify or vacate the judgment after the term); *id.* at 272, 278, 381–384.

Rules authorizing rehearing motions in civil and family-law proceedings fall into the first category. *See* Fla. R. Civ. P. 1.530(a) (requiring that a motion for rehearing be used to preserve certain errors in the judgment and authorizing the trial court to "open the judgment" to "take additional testimony" and "enter a new judgment"); Fla. Fam. L. R. P. 12.530(a) (same).

And subdivisions (f) and (*l*) of rule 3.170 operate the same way.[13] Subdivision (f) authorizes the trial court to retain control over the "judgment of conviction" and "set [it] aside," either "in its discretion" or "on good cause," up until pronouncement of sentence. Subdivision (*l*) then authorizes the trial court to retain jurisdiction over the judgment for thirty days following rendition of the sentencing order, but to consider only a narrow set of challenges to that plea judgment.[14]

These provisions stand in stark contrast to those rules that fall into the second category of authorization for a trial court to

---

13. Rule 3.800's subdivisions (b) and (c) give similar retention authorization to trial courts regarding their sentencing orders.

14. Subdivision (*l*) essentially allows the trial court to retain jurisdiction over its judgment to address, pre-appeal, what later would be collateral attacks on the judgment.

open its judgment—to consider the collateral attack post-appeal (*i.e.*, once the time has passed for taking an appeal or a mandate of affirmance has issued; in either event, the trial court then losing control over the judgment). *Cf.* FREEMAN, *supra*, at 381–84. Under the civil and family-law rules, we do this by authorizing trial courts to consider motions for relief from judgment. *See* Fla. R. Civ. P. 1.540; Fla. Fam. L. R. P. 12.540. And in the criminal context, we give this authorization in rule 3.850, in which we allow the trial court to consider enumerated "grounds [] for relief from judgment or release from custody." Fla. R. Crim. P. 3.850(a); *see also id.* (b) (setting a limitation period running from when "the judgment and sentence become final"); *id.* (c) (noting that the "rule does not authorize relief based on grounds that could have or should have been raised . . . if properly preserved, on direct appeal of the judgment and sentence"); *cf. Morgan v. State*, 350 So. 3d 712, 716 (Fla. 2022) (highlighting the structural and operational difference between rule 3.800(a) and rule 3.850; the former authorizing sentence correction as "an extended part of the sentencing process," the latter authorizing vacatur of the sentence and starting anew as

truly collateral relief).[15]  Indeed, to say that rule 3.170(f) authorized the trial court to consider a collateral attack on Saffold's then-absolutely final judgment would be for us to render certain provisions of rule 3.850 superfluous.

Another telltale of our intent that rule 3.170 operate only pre-appeal and not as collateral authorization: Both provisions appear in the "Arraignments and Pleas" section of the rules, rather than in the "Postconviction Relief" section.  *Cf. Morgan*, 350 So. 3d at 716 (observing that "rule 3.800 proceedings" are an "extended part of the sentencing process in the underlying criminal case," and are not "postconviction proceedings," based in part on the rule's appearance in the "Sentence" portion of the rules rather than the "Postconviction Relief" portion).

---

15.  Rule 3.800(a) in a way is a hybrid because it continues to authorize the trial court to correct its order "at any time," even after completion of an appeal, to address an illegal sentence; yet typically, a rule 3.800(a) proceeding would not commence until after the appellate process became final.  *Cf.* Fla. R. Crim. P. 3.800(b) (allowing a motion to correct sentence, "including an illegal sentence," to be filed before or during an appeal of the sentencing order); *see also* Fla. R. Crim. P. 3.850(b) ("A motion to vacate a sentence that exceeds the limits provided by law may be filed at any time.").

Finally, as I already have mentioned, an order on a motion filed under rule 3.170 is not a separately appealable, final order. Instead, denial of the motion is a preserved *issue* that then may be raised on direct appellate review of the judgment of conviction. *See* Fla. R. App. P. 9.140(b)(2)(A)(ii)c.; *cf.* Fla. R. App. P. 9.020(h)(1)(I) (tolling rendition for a motion filed under rule 3.170(*l*)).

An order on a motion under rule 3.850, by contrast, is a final order—just as an order on a relief-from-judgment motion under rule 1.540 is. *See* Fla. R. App. P. 9.141(b); *cf. Clearwater Fed. Sav. & Loan Ass'n v. Sampson,* 336 So. 2d 78, 79 (Fla. 1976) (describing a "final post decretal order" as one that is "dispositive of any question," constituting a "final and distinct adjudication of rights which have not been adjudicated in the original final judgment"); Fla. R. App. P. 9.130(a)(5) (treating an order "entered on an authorized and timely motion for relief from judgment" as a "specified final order").

Orders on motions under rules like these are treated as final and separately appealable because of their unique, historical function. Rules like 1.540, 3.850, and 12.540 serve as procedural substitutes for various ancient writs and equity claims that served

- 34 -

the same purpose. *See* Fla. R. Civ. P. 1.540 (abolishing "writs of coram nobis, coram vobis, audita querela, and bills of review" and directing that "relief from a judgment or decree shall be by motion . . . or by independent action"); *Baker v. State*, 878 So. 2d 1236, 1239 (Fla. 2004) (explaining that rule 3.850 was intended as a procedural substitute for raising "collateral postconviction challenges to the legality of criminal judgments that were traditionally cognizable in petitions for writs of habeas corpus"). The same cannot be said for a rule like 3.170, the function of which has been described above.

\* \* \*

Saffold basically asks that we pronounce rule 3.170(f) to be the procedural equivalent of rule 3.850. That approach, as a policy matter, makes no sense. Rule 3.170(f) is structurally and operationally different—it has a different purpose—when compared to rule 3.850. Once Saffold's judgment of conviction became absolutely final (when he failed to appeal it), there was no authorization under rule 3.170 for the trial court to consider setting it aside on remand, making Saffold's plea-withdrawal motion—effectively directed at the judgment—a nullity.

- 35 -

Saffold's only pathway for seeking relief from the judgment of conviction at that point was rule 3.850. The Fourth District, then, technically was correct in its conclusion that Saffold was not entitled to submit his plea-withdrawal motion on a remand strictly for resentencing (albeit because the trial court did not have the authority to consider it under rule 3.170(f) in the first place). I concur in the majority's approval of that conclusion and in its disapproval of the Second District's conclusion to the contrary.

Application for Review of the Decision of the District Court of Appeal Certified Direct Conflict of Decisions

Fourth District - Case No. 4D2022-2399

(Broward County)

Daniel Eisinger, Public Defender, and Timothy Wang, Assistant Public Defender, Office of the Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida,

for Petitioner

James Uthmeier, Attorney General, Tallahassee, Florida, Celia Terenzio, Bureau Chief, West Palm Beach, Florida, and Melynda L. Melear, Senior Assistant Attorney General, West Palm Beach, Florida,

for Respondent